D. I. ROBERTS v. WILLIAM N. AND KATE B. REYNOLDS MEMO-
RIAL PARK, ALSO KNOWN AS TANGLEWOOD PARK, AND GRADY
SHUMATE

No. 7121SC231

(Filed 4 August 1971)

Negligence § 34; Games and Exhibitions § 3— rental of golf cart — brake
failure — evidence of negligence — directed verdict

> Plaintiff's evidence that he was injured when the brakes failed
> on the golf cart which he rented from the defendant, together with
> the opinion testimony of plaintiff's expert witness that, under the
> facts of the case, a reasonable inspection of the golf cart at the time
> of rental would have revealed a defect in the brakes, was insufficient
> to withstand defendant's motion for directed verdict on the issue of
> negligence.

> Judge HEDRICK dissenting.

APPEAL by plaintiff from *Armstrong, Judge,* 18 November
1970 Session of Superior Court held in FORSYTH County.

This is a civil action to recover damages for personal in-
juries allegedly sustained by plaintiff while operating a golf cart
rented from the defendants William N. and Kate B. Reynolds
Memorial Parks, Inc. (Tanglewood Park), and Grady Shumate.

The plaintiff, D. I. Roberts, offered evidence tending to
show that on 3 May 1967, he and a friend, David Copen, went
to Tanglewood Park in Forsyth County to play golf. They rented
a Pargo golf cart from defendant Grady Shumate, an employee
of defendant Tanglewood Park, which the plaintiff drove. As
they started down a grade on the first hole, the plaintiff noticed
that the brakes felt as though they were fading, but said noth-
ing, thinking it to be a matter of getting adjusted to the cart's
brakes as compared to the power brakes on his automobile.
Throughout the rest of the first nine holes, the plaintiff did
not notice any further difficulty with the brakes, but mostly
he coasted up to the ball and had no occasion to set the brake on
an incline.

On the tenth hole, the second shots of the plaintiff and his
companion landed near the top of a steep incline. As they ap-
proached Copen's ball, the plaintiff stopped the cart and then
attempted to set the brake which did not hold. With the plaintiff
still applying pressure to the brake pedal, the cart began to roll

backward, picking up speed until it struck a rock which sheared off the front wheel. The plaintiff and his companion were thrown out of the cart, which rolled over on the plaintiff, resulting in personal injuries to him. Copen testified that plaintiff was "pumping on that brake" as the cart rolled downhill. Plaintiff's expert witness testified as follows:

" . . . To get the maximum braking effect, you leave it in. In other words, you keep the pressure on the brake. So that a man who would be pumping or attempting to pump that brake would be releasing the brake each time he pumped. So that if a man, because he panicked or something else, started pumping that brake, he'd be working against himself, he'd be letting the brake off when he should have it on.

" . . . As to whether the fact that a cart rolled back down a hill with a man pumping the brakes would be any indication of a defect in the brakes or not would depend on the incline. If it is a steep incline, it could still roll and him pumping the brakes. Because each time he'd pump he'd be releasing the brakes."

With respect to whether any defects in the brakes on the golf cart could have been discovered by the defendants, plaintiff's expert witness testified:

" . . . Other than a cable breaking, which would cause it to go suddenly, for the brakes to fail would be a gradual thing. The brake lining itself wearing, similar to your automobile would cause them to fail over a period of time. That would not be a sudden thing. It would take a considerable period of time for it to wear to a dangerous degree. A reasonable inspection would reveal whether or not it was worn to a dangerous degree. It would take many, many, many hours of driving to wear it to a dangerous degree.

"As to what kind of inspection would reveal whether or not the linings of the brakes were worn to a dangerous degree, the first thing you would notice, if you have got any wear or loose motion back here, you don't have any brake pedal; you can push the pedal half or three-fourths down; you'd have no brakes. That would be the first sign. It is just like your car; you could still have brakes, but you

wouldn't have the full pedal. And a person who was renting those, who was skilled in them, from day to day by driving it could tell. There would be a visual inspection of the brake mechanism itself that one could tell whether or not the brakes were wearing or worn to a dangerous degree. Well, actually, you can't show it here. But if you know where the brake mechanism is, you can look into it from the side and you can see the brake lining, just like if we were looking at it here. . . . What I am basically saying is, that the operator has to periodically look at it to see. I'd say he should look at it once a year. If he looked at it and the brakes were worn, the brake lining should be replaced. Now, other than the lining wearing out, which would be over a period of time, and the cable breaking, which would be a sudden event, there is nothing that can cause the brakes of this vehicle to fail, that I know of. Assuming that the brakes on a vehicle failed after having been driven over nine and a half holes of a golf course, between 3,300 and 3,500 feet; I have an opinion satisfactory to myself that if the brakes had failed at the end of nine and a half holes as to whether or not a reasonable inspection would have revealed the defect at the time the cart was rented. The answer is yes.

\* \* \*

"If you had the brakes to the floor and the vehicle was not stopping but instead was gaining speed, that would indicate some defects in the brakes. If you had the pedal all the way to the floor and the cart is still rolling, it would indicate some defects in the brakes."

In this regard, the plaintiff testified:

" . . . I was mashing the brake pedal with my foot as hard as I could, sir. The car was going backwards, at that time. . . . I was still trying to apply the brakes or trying to get the brakes to work. I was pressing upon the pedal."

At the close of plaintiff's evidence, the defendants' motion for a directed verdict was allowed on the grounds that the plaintiff's evidence was insufficient to be submitted to the jury on the issue of defendants' negligence. The plaintiff appealed to this Court.

Roberts v. Memorial Park

*Roberts, Frye & Booth, by Leslie G. Frye; and Powell & Powell, by Harrell Powell, Jr., for plaintiff-appellant.*

*Deal, Hutchins & Minor, by John M. Minor and William Kearns Davis, for defendants-appellees.*

BROCK, Judge.

We agree with the ruling of the trial judge that plaintiff has failed to offer evidence of defendants' negligence. Directed verdict for defendants is

Affirmed.

Judge MORRIS concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

A bailor for hire may be liable for personal injuries proximately resulting from the defective condition of a vehicle rented by him, where he is aware of the defect, or by reasonable care could have discovered it. *Hudson v. Drive It Yourself, Inc.,* 236 N.C. 503, 73 S.E. 2d 4 (1952) ; 46 A.L.R. 2d 404, 443.

In the instant case, it would have been negligence for the defendants to have rented a golf cart with defective brakes to the plaintiff and his companion if the defects were known to the defendants or could have been discovered by reasonable inspection.

With respect to whether any defects in the brakes on the golf cart could have been discovered by the defendants, an expert witness for the plaintiff testified:

" . . . I have an opinion satisfactory to myself that if the brakes had failed at the end of nine and a half holes as to whether or not a reasonable inspection would have revealed the defect at the time the cart was rented. The answer is yes.

\* \* \*

"If you had the brakes to the floor and the vehicle was not stopping but instead was gaining speed, that would

indicate some defects in the brakes. If you had the pedal all the way to the floor and the cart is still rolling, it would indicate some defects in the brakes."

In this regard, the plaintiff testified:

"I was mashing the brake pedal with my foot as hard as I could, sir. The car was going backwards, at that time. . . . I was still trying to apply the brakes or trying to get the brakes to work. I was pressing upon the pedal."

"On appeal from the granting of a motion for directed verdict, all the evidence tending to support plaintiff's claim must be taken as true and considered in the light most favorable to him, giving him the benefit of every reasonable inference which legitimately may be drawn therefrom, with contradictions, conflicts and inconsistencies therein being resolved in plaintiff's favor. *Anderson v. Mann*, 9 N.C. App. 397, 176 S.E. 2d 365 (1970)." *Adler v. Insurance Co.*, 10 N.C. App. 720, 179 S.E. 2d 786 (1971). See also *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971).

Evidence that the brakes failed to hold the golf cart on the incline when the plaintiff pressed the brake pedal as hard as he could, when considered with the testimony of the expert witness, is sufficient to raise an inference that the brake lining was defective at the time the cart was rented by the defendants to the plaintiff, and could have been discovered by a reasonable inspection, 46 A.L.R. 2d 404, § 8, which would permit, but not compel, the jury to find that the defendants' negligence proximately caused the accident resulting in personal injuries to the plaintiff.

In my opinion the judgment appealed from should be reversed.